# CASES

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY,

### JULY TERM, 1843.

---

## LEWIS COMBS v. WILLIAM LITTLE.

Premises purchased at sheriff's sale and conveyed to the purchaser under a parol agreement to permit the defendant in execution to redeem, ordered to be reconveyed.

The purchaser, in addition to the price of redemption, allowed a fair compensation for his time, trouble and expenses.

If arbitrators are not sworn, the whole proceeding is utterly void.

BILL for the redemption of real estate, sold by virtue of executions against the complainant, and purchased, as the bill charges, for his benefit, and under a parol agreement that he should be permitted to redeem, upon paying the purchase money bid at the sale.

The bill charges, that the price has been paid by the complainant; prays that an account may be taken of the moneys so advanced, and that the defendant may be decreed to reconvey the premises to the complainant, upon the payment, by him, of the balance, if any, that may be found due to the defendant under the agreement. The bill also prays an injunction to restrain the defendant from proceeding at law to recover

the possession of a part of the premises from the complainant.

The answer denies the complainant's right to redeem; insists that if he ever had such right, it had been either released or forfeited by the complainant; and that, if in the opinion of the court the complainant was entitled to a reconveyance, a large amount still remained due and owing from the complainant to the defendant; that the matters in difference between the parties had been submitted to arbitrators, who had awarded the sum of eight hundred and eighty-seven dollars and seventy-four cents to the defendant, to be paid by the complainant. Admits that the arbitrators were not sworn, but insists that although such omission be ground for reversal, the award is not thereby rendered void, but that the same is in equity final and conclusive between the parties.

Hearing upon bill, answer, replication and proofs.

*Vroom*, for complainant.

*Dayton*, for defendant.

Cases cited by complainant's counsel. 7 *John. Chan.* 40 ; 1 *Green's Chan.* 264 ; 7 *Cranch*, 218 ; 4 *John. Chan.* 167 ; 2 *Eq. Dig.* 258, " *Mortgage*," sec. 1, *pl.* 5, 19, 26.

THE CHANCELLOR. The complainant, who was a considerable land holder in the counties of Monmouth and Middlesex, became embarrassed, and his property was sold under executions issued from the courts of law and from this court. One farm, located at Middletown, was purchased at a master's sale, in eighteen hundred and thirty-five, by Mr. Croes, who has since sold it for the price he paid for it, to the defendant. Prior to this the defendant had purchased, himself, three tracts of woodland belonging to the complainant, at a sheriff's sale. The allegation is, that all this property was purchased on behalf of the complainant, and with the understanding that he might redeem

[Combs v. Little.]

it by paying what it cost the purchasers. There is a wide differ-
ence in the position of the case, as to the farm purchased by Croes,
and the wood lots purchased by the defendant himself. The
sales were made at different times, and by different officers, and
there are facts connected with the one which do not at all belong
to the other. As to the farm sold to Mr. Croes, there is no diffi-
culty in arriving at the character of the sale. Mr. Croes having
conveyed the property without covenants as to the title, is a com-
petent, and certainly every way a reliable witness, and he states
frankly that his object in buying the property was to befriend
the complainant. The right to redeem was clearly agreed to.
The plan was to sell off the wood and pay in that way, as far
as it would go, and then the complainant was to pay off the
balance, compensate Mr. Croes for his trouble, and take the
land back. Trusting, as men are apt to do, in their transactions
with one another, that each will perform his part faithfully, there
was no time fixed when this redemption should take place, or in
what manner the business should be accomplished. This an-
swered very well for the complainant, but having paid his money,
it became irksome to Mr. Croes, and worked towards him a
positive injury. The course pursued by the parties since the
purchase, has, I think, completely absolved Mr. Croes from all
obligation in law or equity to convey any of the property pur-
chased by him, back to the complainant. The sale to Croes
was in December, eighteen hundred and thirty-five; he bought
not only this farm, but other tracts, to the amount in all, of four
thousand two hundred and forty dollars. The other tracts Croes
gave a high price for, but this farm was sold low; the agreement
was that the complainant might redeem the whole, but he passes
by the other lands, and seeks to redeem this farm alone. If
there was no other objection, this would be enough. He cannot,
under any circumstances, be allowed to redeem a part, without
the whole.

The complainant has behaved vexatiously to Croes in this
business; he came into it to help the complainant, and to save
his property for him, but he gave him in the first instance a

[Combs v. Little.]

wrong impression as to the property, leading him to believe a large tract of valuable woodland was included in it, which turned out not to be so, and afterwards kept him out of posses- sion. In February, eighteen hundred and thirty-six, however, the complainant executed a paper to Mr. Croes, which puts an end to the whole contract for redemption. That paper declares the complainant thereafter to be only the agent of Croes in the said lands, and covenants to abandon all possession or right to possession in them. He also agrees to pay rent for the land he occupies himself, and directs his tenant on the Middletown farm (the one now in question) to consider Croes as the landlord, and yield to him the possession. After this the complainant still paid no rent, but refused to give up possession, and Croes brought suits against him, and then for the sake of peace let him remain in possession another year, upon an agreement that he might redeem it at any time within that year. He did not redeem it within this time, and Croes had finally to go with the sheriffs of Middlesex and Monmouth, (for the property lay in two counties,) and with other force, to obtain possession, and gave him fifty dollars to give it up peaceably, which he did. After all this, there is no pretence, in my opinion, on the part of the complainant, for any further right to redeem this property. He has yielded all his right, and should remain satisfied. The evidence attempting to show fraud or any misunderstanding on the part of the complainant as to this paper, is entirely unsatis- factory.

It appears further, that Croes was anxious the complainant should take the property at any time, but he never would. He had a hard bargain of it, and has received nothing in return for his kindness but trouble and vexation.

As to the wood lots, whatever might have been the original design of the defendant, the weight of evidence is clearly in favor of the complainant's right of redemption. The lots sold low, and others did not bid because it was understood they were sold for complainant's benefit. The evidence is sufficient to establish this point, without relying upon the witnesses whose

27

[Combs v. Little.]

competency is brought in question ; and it would be useless, therefore, to settle that point.

William Hawkins, William Combs, Cornelius Boice and Robert Mathews, all prove sufficient for this purpose, and even John M. Perrine, the sheriff who sold the property, and Nicholas M. Disbrow, the crier at the vendue, both say, it was their impression from what they saw and heard at the sale, that the defendant bought for the complainant.

This whole business seems to have been managed in a careless manner, and just so as to place the advantage on the side of the complainant. It is sufficient for the present purpose, however, to be satisfied, that the right of redemption of the three wood lots referred to in the bill, is with the complainant, and that he is entitled, from the evidence, to be restored to his land upon paying what shall be found due, if any thing, on settlement of accounts between him and the defendant.

From some expressions which fell from the witnesses, it would seem, that the redemption was to take place upon the defendant being paid the whole that complainant owed him, whether particularly relating to this land or not. He stepped in as his friend and bought his property, with the promise that when he was made whole for whatever complainant owed him, he should have his land again. The defendant will also be entitled to a fair compensation for his time, trouble and expenses bestowed on this business. This is no more than is just and proper under the circumstances.

So far as relates to the arbitration which has taken place between these parties, it can pass for nothing, in the view which I take of this case. In that arbitration the Middletown farm was embraced, and quite probably, as suggested in the argument, from a desire on the part of the defendant to do almost any thing to get through with this tedious and unpleasant controversy. My own opinion is, that as the arbitrators were not sworn, the whole proceeding is void.

The injunction, therefore, having relation only to the ejectment brought by the defendant to recover possession of the Mid-

dletown farm, was rightly dissolved, and that order must be confirmed. The usual reference, upon the other part of the case, must be made to a master, to state an account between the parties, in conformity with the views expressed in this opinion.

Reference to a master.